UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

LUIS MACHUCA-GONZALEZ and
IVETTE RODRIGUEZ,

                  Plaintiffs

v.

OLATUNJI M. BOST, BOST TRANSPORT, LLC
and NATIONAL TRANSPORT SERVICES CO.,
INC.,

                  Defendants.

14-CV-8690 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

Plaintiffs Luis Machuca-Gonzalez ("Gonzalez") and Ivette Rodriguez ("Rodriguez") (collectively "Plaintiffs") commenced this action asserting claims sounding in negligence and violations of Sections 1128(a) and 1163 of N.Y. Vehicle and Traffic Law ("VTL") as against Defendants Olatunji M. Bost ("Bost"), Bost Transportation, LLC ("Transportation") and National Transport Services Co., Inc. ("National").[1] Plaintiffs assert they sustained personal injuries on March 29, 2014 as a result of a motor vehicle accident that occurred while they were traveling along I-87 in New York. Such accident was allegedly caused by the negligence of Bost, who was driving a tractor trailer at the time. Now before this Court is Plaintiffs' motion for summary judgment on the issue of liability. In opposition, Defendants argue that there are material issues of fact which warrant denial of the motion.[2] For the following reasons, Plaintiffs' motion is DENIED.

---

[1] The Court has subject matter jurisdiction by virtue of diversity jurisdiction.
[2] Defendants, in opposition to Plaintiffs' motion for summary judgment, rely on the same deposition transcripts submitted by Plaintiffs.

# LEGAL STANDARD

## A. Standard of Review

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure, which states in pertinent part that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of pointing to evidence in the record, "including depositions, documents . . . [and] affidavits or declarations," *see* Fed. R. Civ. P. 56(c)(1)(A), "which it believes demonstrate[s] the absence of a genuine issue of material fact," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may support an assertion that there is no genuine dispute of a particular fact by "showing . . . that [the] adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). If the moving party fulfills its preliminary burden, the onus shifts to the nonmoving party to raise the existence of a genuine issue of material fact. Fed. R. Civ. P. 56(c)(1)(A); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord Benn v. Kissane*, 510 F. App'x 34, 36 (2d Cir. 2013); *Gen. Star Nat'l Ins. Co. v. Universal Fabricators, Inc.*, 585 F.3d 662, 669 (2d Cir. 2009); *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008). Courts must "constru[e] the evidence in the light most favorable to the non-moving party and draw[] all reasonable inferences in its favor." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (quoting *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 113 (2d Cir. 2005)). In reviewing the record, "the judge's function is not himself to weigh the evidence and determine the truth of the matter," nor is it to determine a witness's credibility. *Anderson*, 477 U.S. at 249; *see also Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010) ("The function of the district

court in considering the motion for summary judgment is not to resolve disputed questions of fact."). Rather, "the inquiry performed is the threshold inquiry of determining whether there is the need for a trial." *Anderson*, 477 U.S. at 250. Summary judgment should be granted when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

If the proponent meets this threshold burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Bennett v. Watson Wyatt & Co.*, 136 F. Supp. 2d 236, 244 (S.D.N.Y. 2001). "Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation" (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998))).

**B. Standard for Negligence**

Plaintiffs have primarily asserted a cause of action sounding in negligence. "To establish a prima facie case of negligence under New York law, a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 286 (2d Cir. 2006) (internal citations and quotations omitted); *see also Akins v. Glens Falls City Sch. Dist.*, 53 N.Y.2d 325 (1981). "Negligence is the absence of care, according to the circumstances." *Palsgraf v. Long Island R. Co.*, 248 N.Y. 339, 341 (1928) (internal citations omitted). Fundamentally, "[w]hen a statute, in the interest of the general public, defines the degree of care to be used under specified

circumstances, it . . . defines a duty enforceable in a common-law negligence action." *Duncan v. Kelly*, 671 N.Y.S.2d 841, 842 (App. Div. 3d Dept. 1998) (citing 1A N.Y. Pattern Jury Instr. 2:25, at 217 (3d ed. 1998).

### C. Standard for Violations of N.Y. Vehicle and Traffic Law

Plaintiffs have also asserted that Defendants violated sections of the VTL. VTL § 1128 provides, that "whenever any roadway has been divided into two or more clearly marked lanes for traffic . . . a vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety." N.Y. VEH. & TRAF. LAW § 1128(a). VTL § 1163 requires a driver of a motor vehicle to signal "to indicate an intention to turn [or] change lanes" prior to the turn or lane change. N.Y. VEH. & TRAF. LAW § 1163(d). When read together, it is evident that the VTL imposes upon a driver a duty to operate a motor vehicle within a designated lane, to signal prior to changing lanes or turning, and to change lanes or turn only when it is safe to do so. Further, all drivers are generally charged with the duty to see that which "she should have seen by the proper use of her senses," *see* N.Y. Pattern Jury Instr. 2:77.1; *see also Conradi v. New York City Transit Auth.*, 671 N.Y.S. 2d 506, 507 (App. Div. 2d Dept. 1998); *Pedersen v. Balzan*, 499 N.Y.S.2d 239, 240 (App. Div. 3d Dept. 1986), such that she must "exercise reasonable care under the circumstances to avoid an accident," *Johnson v. Phillips*, 690 N.Y.S.2d 545, 547 (App. Div. 1st Dept. 1999) (internal quotation omitted).

## DISCUSSION

### A. Evidence Presented to the Court

Plaintiffs allege that on or about March 29, 2014, they were traveling inside a moving vehicle along I-87 in Orange County, New York. At approximately 11:30 p.m., they were involved

4

in a motor vehicle accident with a tractor trailer truck driven by Bost and owned by National and/or leased by Transport. As a result of the accident, Plaintiffs purportedly sustained multiple bodily injuries. Plaintiffs assert the accident occurred solely as a result of the Defendants' negligence. In support of their motion, Plaintiffs submit, *inter alia*, several depositions including that of Gonzalez, Rodriguez, Bost, and non-party witness James R. Manera ("Manera").

   1. Plaintiff Gonzalez's Testimony

Gonzalez avers that on March 24, 2014 at approximately 11:30 p.m., he was operating his Honda automobile northbound on I-87 in New York heading home. (Declaration of Oliver R. Tobias ("Tobias Decl.") (ECF No. 52), Ex. J, Deposition Transcript of Luis Machuca-Gonzalez dated October 2, 2015 ("Gonzalez Tr."), at 68:7-9, 16-20, 72:2-8.) His wife, Rodriguez, was a front seat passenger at the time. (*Id.* at 68:25–69:5.) The road was purportedly a bit wet and it was slightly foggy outside. (*Id.* at 74:3-6.) Traffic on I-87 was fair-to-medium and vehicles were traveling within the speed limit. (*Id.* at 74:7-15.) He describes I-87 as having two lanes, though sometime after Exit 16, the Woodbury Toll Booth, it becomes three lanes. (*Id.* at 72:20–73:6.) Gonzalez further avers that prior to entering the area near Exit 16, he was traveling approximately 55 m.p.h. in the right lane and remained in that lane up until the time he was involved in the subject accident. (*Id.* at 73:7-12; 73:25–74:2.)

Just prior to the collision, Gonzalez observed a tractor trailer truck (the Defendants' vehicle) traveling northbound in the left lane. (*Id.* at 76:22–77:22.) Plaintiffs' vehicle and the truck were traveling side-by-side when suddenly the truck crossed over from the left lane into the right lane, causing the truck's right front fender to strike Plaintiffs' left driver's side door. (*Id.* at 78:6–79:20.) Within seconds of the first impact, Gonzalez felt a second impact. (*Id.* at 80:4-7.) The second impact occurred when the back end of the tractor trailer struck the middle of the left

5

side of Gonzalez's vehicle. (*Id.* at 80:8-21.) Immediately after the first impact, Gonzalez applied his brakes and the vehicle slowed down a bit. (*Id.* at 80:22–81:18.) After the second impact he applied his brakes but his vehicle was forced to "run off the road" past the right shoulder. (*Id.* at 81:20–82:13.) Plaintiffs' vehicle came to stop after it drove into a ditch. (*Id.* at 82:17–84:7.)

With the aid of a good Samaritan (Manera), Gonzalez and his wife were able to exit the vehicle. Manera called the police and a New York State Trooper responded to the accident scene and prepared an accident report. (Gonzalez Tr. at 88:2-19, 89:3-7, 12-13, 16-23.) Sometime thereafter, Bost, the driver of the tractor-trailer, also arrived. (*Id.* at 90:5-11.) Bost asked how Plaintiff Gonzalez was doing and stated: "[s]orry, I didn't see you." (*Id.* at 90:14-16.)

2. Plaintiff Rodriguez's Testimony

Rodriguez avers that on March 29, 2014, she was a front seat passenger in her husband's vehicle traveling northbound in the right lane on I-87. (Tobias Decl., Ex. K, Dep. Tr. of Ivette Rodriguez dated October 2, 2015 ("Rodriguez Tr."), at 40:4-11, 41:9-11.) Somewhere near Exit 16, she noticed a tractor trailer truck traveling alongside her vehicle in the left northbound lane. (*Id.* at 40:7-24, 41:12-17.) She observed the tractor trailer quickly move from the left lane into the right lane, striking her husband's vehicle. (*Id.* at 40:19-24, 41:15–42:8.) "The front part, the bumper wheel" of the tractor trailer struck her vehicle. (*Id.* at 42:3-8.) After being initially struck by the tractor trailer, her vehicle slowed down a bit before she felt a second impact which sent her vehicle "swerving off the side of the road into the woods." (*Id.* at 43:6-14.) The vehicle came to a complete stop upon hitting a tree. (*Id.* at 45:2-8.) A passerby, Manera, assisted her and her husband after exiting the car. (*Id.* at 46:10-17.) After the NYS Trooper arrived, an individual whom she believed was the driver of the tractor trailer arrived. (*Id.* at 46:18–47:22.) She witnessed

6

her husband speaking to the driver and overheard the driver say "I didn't see you guys." (*Id.* at 47:14-22.)

    3. <u>Defendant Bost's Testimony</u>

Bost avers that on Saturday, March 29, 2014 at approximately 11:30 p.m., he was operating his tractor trailer truck (ShopRite trailer) northbound on I-87. (Tobias Decl., Exs. L1 and L2, collectively, Dep. Tr. of Olatunji M. Bost dated January 13, 2016 ("Bost Tr."), at 48:23–49:25, 53:16-23, 85:21-25.) Bost recalls that although March 29, 2014 was a dry day, there was mist in the air. (*Id.* at 73:8-19.) While discussing the topography, Bost testified that the northbound area of I-87, prior to the accident site, is flat and straight and consists of two lanes. (*Id.* at 83:9–84:5.) Traffic was light that evening. (*Id.* at 84:14-19.)

Just prior to the accident, Bost avers he was traveling in the right lane when he noticed Plaintiffs' vehicle in front of him driving at a slow speed. (*Id.* at 87:5-25.) Bost turned his left turn signal on then proceeded to move his truck out from behind Plaintiffs' vehicle and into the left lane. (*Id.* at 89:2-6.) Bost changed lanes with the intention of passing Plaintiffs' vehicle and then moving back into the right lane. (*Id.* at 89:16–90:19.) Once in the left lane, Bost put his right signal light on. (*Id.* at 91:9-12.) While in the left lane, Bost began "passing him," –referring to Plaintiffs' vehicle– and with his right signal light on, began to slightly move, "inching" his way toward the right lane. (*Id.* at 96:10-23.) Before reaching the white (dotted or broken) lane lines on the road to the right of his truck, Bost felt an impact on the right side of the truck.[3] (*Id.* at 95:1-11.) A few seconds prior to the collision, Bost looked in his right side view mirror and observed

---

[3] On the one hand Bost testified: "I don't think my right wheel crossed the line, there was contact," indicating that the impact occurred before he had a chance to cross into the right lane. (*Id.* at 95:9-11.) On the other, he testified that "as soon as my wheel hit the line, it was contact," indicating he could have crossed into the right lane before the impact. (*Id.* at 96:22-23.)

7

Plaintiff's vehicle in the right lane halfway down the trailer.[4] (*Id.* at 96:3-16, 97:15-24.) Although Bost only recalled and perceived one impact from the collision, he was unsure if there were, in fact, more impacts. (*Id.* at 104:15-23.)

After the collision, Bost's truck nearly jack knifed and coasted down the road onto the right shoulder. (Bost Tr. at 105:12-21.) After it came to a stop, Bost exited the truck. (*Id.* at 106:20-24.) Once outside, he inspected the truck and observed damage to the right front bumper and fender. (*Id.* at 106:20–107:3.) Some distance behind him, he observed a vehicle off to the side of the right shoulder, which was partially in a ditch, and a pickup truck on the side of the road. (*Id.* at 109:1-10, 111:21–112:3.) He spoke briefly with the pickup truck owner, the Trooper, and the driver of the other vehicle. (*Id.* at 112:15-23, 113:9-22.) Other than asking the driver if he and "his girlfriend", the other occupant of the car, were "alright," he made no other statement. (*Id.* at 113:9–114:3.)

    4. <u>Non-party Witness Manera's Deposition</u>

Manera avers that during the late evening of March 29, 2014 (prior to midnight), he was on his way home traveling northbound on I-87 in New York. (Tobias Decl., Ex. M, Dep. Tr. of James Manera dated March 25, 2016 ("Manera Tr."), at 10:18–11:24.) He was driving in the right lane of the interstate behind an 18-wheeler ShopRite tractor trailer. (*Id.* at 11:14-19, 12:3-10.) Although it was foggy outside, the road was dry and traffic was very light. (*Id.* at 12:11-22, 13:13-14.) As he proceeded along I-87, he observed the ShopRite trailer signal and move from the right lane into the left lane. (*Id.* at 14:4-7.) Once the ShopRite truck was traveling in the left lane, he

---

[4] When questioned by attorney Duncan, Bost testified that about three to four seconds prior to the impact, he observed Plaintiffs' vehicle in the right lane behind the truck. (*Id.* at 97:15-24.) He also testified that the Honda vehicle "was by the wheels by the tandem." (*Id.* at 134:11-21.) He saw the headlights of the Honda vehicle next to the tandem wheels of the trailer. (*Id.* at 134:22–135:2.) Upon questioning, Bost testified that his truck had two tandems (axels) underneath the trailer; one in the front, right behind the cab and the other at the rear of the vehicle. (*Id.* at 135:2-10.) Accordingly, he confirmed that when he saw Plaintiffs' headlights by the tandem wheels, he was referring to the wheels at the "very rear of the trailer." (*Id.* at 135:11-15.)

observed a dark Honda in front of him traveling in the right lane at a slightly slower speed. (*Id.* at 15:24–16:12.) After noticing the Honda, Manera also changed lanes, moving from the right lane into the left lane behind the ShopRite truck. (*Id.* at 16:13-20.)

As Manera traveled in the left lane, and prior to the ShopRite truck overtaking the Honda, he observed the truck put on his right signal as it "was in the middle of overtaking the Honda." (*Id.* at 17:14-19.) While still attempting to overtake the Honda, Manera observed the truck proceeding "to change back into the right lane." (*Id.* at 19:3-5.) At the time the truck attempted "to change back into the right lane," the nose of the truck was "no more than six to eight feet" ahead of the Honda, but "didn't get much passed the cab of the truck itself." (*Id.* at 19:3-18.) Soon after the truck moved toward the right lane, it struck the Honda vehicle. (*Id.* at 20:1-18.) The front passenger-side wheel of the truck struck the Honda's driver's side front fender and door. (*Id.* at 20:19–21:22.) Manera also testified that at the time of the collision, he was traveling directly behind the truck.[5] (*Id.* at 21:16-17.) Following the first collision, he observed the trailer whip a bit and strike the Honda a second time. (*Id.* at 22:5-23.) The rear portion of the trailer appeared to strike the front fender of the Honda. (*Id.* at 23:2-10.) The force of the second impact caused the Honda to drive off the road past the right shoulder. (*Id.* at 23:11-16.) Before and during the collision, the Honda remained in the right lane. (*Id.* at 54:6-23.)

After the accident, Manera drove his vehicle onto the right shoulder where he parked and exited his car. (Manera Tr. at 28:6-20.) He called 911 and the police, and assisted the occupants of the Honda exit their vehicle. (*Id.* at 30:15–32:19.) Manera also observed Plaintiffs' vehicle and noted that the middle of the left side of the Honda had markings (impact markings), which

---

[5] Although Manera testified that he observed the collision, he also testified that he couldn't say with "certainty at that point what part of the truck had touched the car." (*Id.* at 21:18-20.) He further testified that he saw "the trailer tires going go [sic] over the [left] lane back into the right lane." (*Id.* at 53:20-24.) At the time he observed the collision, he only had a view of the trailer tires (rear portion of the truck) but not the cab tires (front portion of the truck). (*Id.*)

9

appeared to come from the truck's lug nuts (wheel bolts). (*Id.* 21:14-22, 58:18–59:6, 62:21–63:19.)

B. **Analysis**

Plaintiffs assert that, based on a review of the deposition testimony and exhibits proffered, there are no material issues of fact as to the sole proximate cause of the motor vehicle accident which preclude granting summary judgment. (Plaintiff's Brief in Support of the Motion for Summary Judgment (ECF No. 50) ("Plf's Br."), ¶2.) Plaintiffs assert that the evidence demonstrates that Defendant Bost negligently operated his truck when he made an unlawful and unsafe lane change which resulted in a collision between the truck and Plaintiffs' vehicle. (*Id.*) More specifically, Plaintiffs assert that Defendants' negligence is the sole proximate cause of the accident. (*Id.*) Though Plaintiffs are correct that there is evidence which supports the contention that Defendant Bost negligently operated the truck, a consideration of all of the proffered evidence requires denial of summary judgment.

Plaintiffs and Manera provide very similar descriptions of the events. Specifically, they all testified that Plaintiffs' vehicle, the Honda, remained in the right lane prior to the collision and at the time of the collision(s). (Gonzalez Tr. at 73:7-12; Rodriguez Tr. at 41:9-11; Manera Tr. at 54:6-23.) Similarly, they testified that it was Defendant Bost who, while operating the truck, changed lanes from left to right completely overtaking (passing) the Honda, prior to the time when it was safe to do so. (Gonzalez Tr. at 78:6–79:20; Rodriguez Tr. at 40:19-24, 41:18–42:8; Manera

Tr. at 19:3-18.) Thus, based on the accounts of the accident given by Plaintiffs and Manera, the accident was caused solely due to Defendants' negligence.[6]

Defendant Bost, however, gave conflicting versions concerning the mechanism of the accident. Bost testified that he initially changed from the right lane to the left lane with the intention of overtaking Plaintiffs' vehicle and then changing back into the right lane. (Bost Tr. at 89:16–90:19.) As he was in the process of overtaking Plaintiffs' vehicle to return back to the right lane, Bost maintains that his truck was suddenly struck on the right passenger side, contrary to the testimony of Plaintiffs and Manera. (*Id.* at 95:1-11.) Of great significance, Bost testified that at the time of the first impact, he was still located in the left lane and his truck had not yet crossed the white dotted or broken lane lines. (*Id.* at 95:1-11.) This evidence suggests that Bost remained in the left lane at the time of the first impact.

In contradiction to his own testimony, Bost testified that about three to four seconds prior to the first impact, he observed Plaintiffs' vehicle in the right lane behind the truck as being "by the wheels by the tandem" at the rear of the trailer. (Bost Tr. at 134:11-21, 135:11-15.) Despite Bost's clarification that the tandem he was referring to was the one at the very rear of the trailer, indicating he likely believed it was okay to pass, such testimony may nevertheless suggest that Bost had not yet completely overtaken the Honda such that it was safe for him to change lanes. Bost also testified that he was in the process of inching his way onto the right lane when "as soon as my wheel hit the line (dotted or broken lane line), it was contact." (*Id.* at 96:22-24.) Such testimony suggests it was Defendant Bost who was changing lanes from left to right, when the

---

[6] Plaintiffs also testified that Bost made an inculpating statement immediately after the accident. (Gonzalez Tr. at 90:14-16; Rodriguez Tr. at 47:14-22.)

11

collision occurred. The contradictions in Bost's testimony alone raise credibility questions this Court cannot resolve on a motion for summary judgment. *See Anderson*, 477 U.S. at 249.

Further, the contradictions between the version of events as told by Plaintiffs and Manera and the version of the evidence most favorable to Bost warrants denial of summary judgment. It is well settled that when considering a summary judgment motion, the motion court is required to resolve all ambiguities and draw all inferences in favor of the nonmoving party. *LaFond v. Gen. Physics Servs. Corp.*, 50 F.3d 165, 171 (2d Cir. 1995) (citing *Gallo v. Prudential Residential Servs., Ltd. Partnership*, 22 F.3d 1219, 1223 (2d Cir.1994)); *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir.1987). To be negligent, Bost must have been the proximate cause of Plaintiffs' accident. *Lerner*, 459 F.3d at 286. Viewing the evidence in the light most favorable to the nonmoving party, Bost, and resolving all ambiguities in his favor, the prevailing version of events, as he tells it, is that he never crossed over the dotted white line into the right lane before the impact occurred.

If Bost is correct that he did not cross over the line and just felt a sudden impact, then he could not have been the proximate cause of Plaintiffs' injuries. If Plaintiffs' and Manera's version is correct and Bost *did* cross over the line before it was safe to do so, *see* N.Y. Veh. & Traf. Law § 1128(a), then he is *per se* negligent, *see Duncan*, 671 N.Y.S. 2d at 842. Accordingly, whether or not he did so and his proximity to Plaintiffs' vehicle in doing so (an issue of which there are also multiple versions in the record) are material to the issue of Defendants' liability.[7] At the summary judgment motion stage, the court's ruling is limited to determining whether there are any genuine issues of material fact to be tried and not to deciding them. *LaFond*, 50 F.3d at 171 (citing

---

[7] This Court notes that definitively determining which version of events is true would require the Court to make a credibility determination, "weigh the evidence[,] and determine the truth of the matter"; an impermissible action at the summary judgment stage. *Anderson*, 477 U.S. at 249; *see also Kaytor*, 609 F.3d at 545.

12

*Gallo*, 22 F.3d at 1224). Due to the conflicting accounts of whether Defendant Bost crossed over the dotted white line prior to the impact and if so, whether he was a safe distance away from Plaintiffs' car prior to, this Court finds that genuine issues of material fact exist that preclude the grant of summary judgment.

The Court is mindful that a driver is negligent if he or she makes an unsafe lane change, *see* VEH. & TRAF. LAW § 1128(a), or fails to see that which, through the proper use of one's senses, should have been seen, *see Allen v. Echols*, 931 N.Y.S.2d 402 (App. Div. 2d Dept. 2011), and that there can be more than one proximate cause of an accident, *id.*; *see Pollack v. Margolin*, 921 N.Y.S.2d 282 (App. Div. 2d Dept. 2011). Further, comparative negligence, an issue raised by Bost, is generally a question for the trier of fact, *see Allen*, 931 N.Y.S.2d at 403 (citing *Wilson v. Rosedom*, 919 N.Y.S.2d 59 (App. Div. 2d Dept. 2011), not to be decided at the summary judgment stage. Accordingly, the Court need not consider this issue now.

While one version of events may demonstrate that Bost was negligent and violated the VTL, as previously articulated by the Court, the fact that more than one version of events exists as to this critical inquiry binds this Court to finding that summary judgment is not warranted. Plaintiffs have failed to eliminate all triable issues of fact as to whether the Defendants' were negligent in the operation of the tractor trailer, and whether such negligence was the sole proximate cause of the accident. The grant of summary judgment is improper.

## CONCLUSION

For the reasons set forth above, Plaintiffs' motion for summary judgment on the issue of liability is DENIED. The Clerk of the Court is respectfully requested to terminate the motion on

Docket No. 49. The parties are directed to appear this honorable Court on January 11, 2018 at 10:45 a.m. for a status conference.

Dated:   November 27, 2017
          White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge